Wm. A. Ott *v.* R. P. Smith, *et al.*

## WM. A. OTT *v.* R. P. SMITH, *et al.*

SLAVES TITLE VESTS IN LEGATEE. *Assent of Executor not Necessary. Time for Computing Value in view of Collation.* Where a testator died possessed of slaves, the title to the same upon his death vested in his legatees, and to this end the consent of the executor was not necessary, but as the slaves ceased to be property before any division, in collating advancements, their value when the title vested was properly taken into account in ascertaining the rights of the legatees.'

Cases cited: Savage *v.* Hale, 1 Sneed, 367; Elliot *v.* Holder, 3 Head, 700; Johnson *v.* Johnson, 2 Heisk., 526.

Code cited: §2246.

Act cited: Act of 1827, Ch. 61.

### FROM RUTHERFORD.

Appeal from the Chancery Court. JOHN P. STEELE, Chancellor.

PALMER & RICHARDSON for Ott.

JNO. W. BURTON and CHAS. READY for Smith *et al.*

NICHOLSON, C. J., delivered the opinion of the Court.

This is a controversy between R. P. Smith and wife, and John Buchanan and wife, together with two others on the other side, all the parties being legatees of James McGill, deceased. Before his death he had advanced to his daughter, Elizabeth Smith, two slaves, which he valued at $1,860. After making this advancement, to-wit, on the ninth of December, 1861, he executed his will, and died about the sixteenth of February, 1862. His will was proven and recorded in the Rutherford County Court in 1865, when A. D. Ott administered; the executor named in the will not qualifying. Afterwards A. D. Ott died, and in 1868, W. A. Ott, was qualified as administrator, *de bonis non,* etc. He files this bill for the collation of advancements, and for a construction of the will of James McGill.

After giving to his widow three slaves by name, he directs in item three, that the balance of his negro property be divided into five equal shares, one of which he gives to his wife during her life.

In item fifth, he says: "The balance of my land, after laying off to my wife her one-third, and the balance of my negroes, not herein given to my wife for life, I give and devise to all of my children equally."

In item eight, he says: "I have heretofore given,

by way of advancements, to my daughter, Elizabeth Smith, a negro woman, purchased for her at $1,160, and . a negro girl at $700, making $1,860. In the division of my land and negroes, she is to be charged with the value as above of said two negroes, and the other children are to be made up an equal amount out of the land and negroes, before she shall get any part thereof."

Testator was the owner at his death of eleven thousand acres of land, and nineteen slaves.

The Chancellor decreed that the two slaves advanced to Elizabeth Smith, at the value of $1,860, be collated and brought into contribution by the administrator, in distributing the estate according to the will, first against the remaining slaves, to be valued at the date of the death of the testator, on the 16th of February, 1862; and that unless this value of $1,860 shall exceed the one-fourth part in value of all the slaves of the estate, the two given to Elizabeth Smith included, the devise of real estate to Elizabeth Smith is not liable to abate, in order to make this sum of $1,860, or any part thereof.

The Clerk and Master was ordered to take proof, and report value of the nineteen slaves at the death of testator.

The Clerk and Master reported that the value of all the slaves of which testator died possessed, was the sum of $9,450, and the value of the two advanced to Elizabeth Smith, $1,860, being less than one-fourth in value of the slaves owned by testator at his death,

the Chancellor decreed that this sum of $1,860, should not be charged to Elizabeth Smith in the division of testator's real estate, holding that the title to the nineteen slaves vested upon his death in his children and devisees under his will.

The cause is brought here by appeal of Buchanan and wife, and the two minor defendants. For them it is insisted · that the Chancellor erred in holding that the title to the slaves, of which the testator was owner was vested upon his death in his legatees. It is said that the assent of the executor was necessary to the vesting of the title in the legatees. This presents the only question in the case.

By the common law, every legatee, whether general or specific, and whether of chattels, real or personal, was required to obtain the executor's assent to the legacy before his title as legatee was complete and perfect. The whole personal property of the testator was devolved upon his executor. 2 Wms. Ex'rs., 1235.

This doctrine was repeatedly and uniformly held in this State, until it was changed as to slave property, by the construction placed upon the Act of 1827, Ch. 61. In the case of *Savage* v. *Hale,* 1 Sneed, 367, the Court said: "Since the Act of 1827, Ch. 61, the title to slaves does not pass to the personal representative, as before that Act was the case as to all personal property, but to the distributees, as land goes to the heirs on the death of their ancestor, with no other exception but that the administrator is

bound to take possession of them, and if not required to pay debts to distribute them." In the case of *Elliot* v. *Holder*, 3 Head, 700, it was held as follows: "The principle being established, that in the present state of the law, in case of a person dying intestate, the title to slaves passes directly to the distributees, subject to the trust in the personal representative in behalf of the creditors of the estate, it necessarily results, that, as between themselves, and as against all others, except creditors of the estate, the title of the distributees must be regarded as complete, without the assent of the administrator."

The same rule was recognized in 2 Sneed, 365, and in *Johnson* v. *Johnson*, 2 Heisk., 526. In the latter case it was held, "since the Act of 1827, Ch. 51, and the Code, §2246, the title to slaves vested directly in the distributees of an intestate, or the legatees of a testator, and not in the administrator or executor, as it did prior to that Act.

It follows, that, upon the death of the testator, the nineteen slaves descended and vested in his legatees, subject as among themselves to immediate divison; but as the slaves ceased to be property, by operation of law, before any division, in collating advancements, their value when the title vested was properly adopted in ascertaining and settling the rights of the legatees.

The Chancellor so held, and we affirm his decree.